United States District Court
Southern District of Texas
**ENTERED**
January 13, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PEDRO LUNA, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:19-cv-176 |
| | § | |
| WILLIAM BARR, et al., | § | |
|    Defendants. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On September 10, 2019, Plaintiff Pedro Luna filed a complaint against the following defendants: William Barr, in his official capacity as the Attorney General; Norma Limon, in her official capacity as the Harlingen Field Office Director for United States Citizenship and Immigration Services; Chad Wolf[1], in his official capacity as the acting director of the Department of Homeland Security; and the Department of Homeland Security (collectively "Defendants"). Dkt. No. 1. Luna seeks "de novo judicial review of the denial of his application for naturalization," pursuant to 8 U.S.C. § 1421(c). Id.

On November 15, 2019, Defendants filed a motion to dismiss for lack of jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). Dkt. No. 5. On December 21, 2019, Luna timely filed a response. Dkt. No. 8.

After reviewing the record and the relevant case law, it is recommended that the motion to dismiss be granted. While the Court has jurisdiction over the case, it cannot grant Luna the relief sought because Luna is currently in removal proceedings.

---

[1] Luna originally sued Kevin McAleenan in his official capacity as acting Secretary of DHS. Pursuant to FED. R. CIV. P. 25(d), Chad Wolf is automatically substituted as the proper defendant.

1

**I. Background**

    **A. Factual Background**[2]

Luna was born in November 1970 in Mexico. Dkt. No. 1, p. 3.

On July 19, 1983, Luna was issued a Mexican passport, which included an "indefinite" nonimmigrant travel visa to enter the United States, otherwise known as a border crossing card. Dkt. No. 1, p. 3. This passport expired on July 18, 1988, without being renewed. Id.

On April 23, 1990, Luna "entered into a civil marriage," with his wife, Maria de los Angeles Quezada. Dkt. No. 1, p. 3. They were married by a justice of the peace in Cameron County, Texas. Dkt. No. 2-1, p. 23. Despite being legally married, he did not consider himself to be married at that time, because "he was still not living with his wife" because the two had not yet had a "church wedding." Id.

On July 7, 1990, Luna applied for a Mexican passport. Dkt. No. 1, p. 3. On that passport, he listed his marital status as single. Id.; Dkt. No. 2-1, p. 25. This passport also included a non-immigrant travel visa to the United States. Id., p. 26.

On July 25, 1990, Luna and his wife had a "religious wedding in Matamoros and began to live […] as husband and wife." Dkt. No. 1, p. 4. At some point after this wedding, Luna applied for an adjustment of status, as the spouse of a U.S. citizen. Id. On March 21, 1991, the United States Citizenship and Immigration Services ("USCIS") denied the application for adjustment of status. Dkt. No. 1, p. 4.

On May 2, 1991, the U.S. consulate in Mexico granted Luna's application to become a permanent resident of the United States. Dkt. No. 1, p. 4. "At the time of his consulate processing he declared that he had applied for a border crossing card on July 28, 1983 (when he was 12 years old) and that his adjustment of status was denied on March 22, 1991." Id. "Since he had not been married for more than two years it was granted as a

---

[2] When deciding a motion to dismiss, the Court must accept "all well-pled facts as true and view all facts in the light most favorable to the plaintiff." Melendez v. McAleenan, 928 F.3d 425, 427 (5th Cir. 2019). However, as discussed further below, the analysis in this case is based on a pure question of law.

conditional legal permanent resident." Id. On March 11, 1993, the conditional status was removed and Luna became a full permanent resident. Dkt. No. 1, p. 4.

On August 31, 2016, Luna filed an application to become a naturalized U.S. citizen. Dkt. No. 1, p. 4. On January 6, 2017, USCIS denied the application on the grounds that Luna had willfully misrepresented his marital status in his first application for adjustment of status, making him ineligible to be admitted to the United States, pursuant to 8 U.S.C. § 1182(a)(6)(c). Id.

On January 24, 2017, Luna filed for a hearing on his naturalization application. Dkt. No. 1, p. 4. On May 15, 2019 and June 18, 2019, the hearing was held. Dkt. No. 2-1, pp. 28-29. On July 10, 2019, the naturalization application was again denied on the basis that Luna had previously misrepresented his marital status. Id. This decision "constitute[d] a final administrative denial" of the naturalization application. Id.

On November 14, 2019 — after the filing of the complaint in this case — the Government filed removal proceedings against Luna. Dkt. No. 5-1, p. 2. The notice of removal alleges that Luna's statements in 1990-91 concerning his marital status were material misrepresentations that rendered him inadmissible to the United States. Id.

**B. Procedural History**

On September 10, 2019, Luna filed a complaint against: (1) Barr, in his official capacity as Attorney General; (2) Limon, in her official capacity as the Harlingen Field Office Director for USCIS; (3) Wolf, in his official capacity as Secretary of the Department of Homeland Security; and (4) the United States of America. Dkt. No. 1. Luna, pursuant to 8 U.S.C. § 1421(c), seeks de novo review of the denial of his naturalization application. Id. The complaint alleges that any misrepresentations made by Luna in 1990 regarding his marital status were not willful since he did not consider himself to be married until "he had the religious wedding." Id., p. 5.

On November 15, 2019, Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. No. 5. Defendants argue that 8 U.S.C. § 1429 prohibits the Court from considering the naturalization application while removal proceedings are pending. Id.

On December 21, 2019, Luna filed a response, arguing that the Court can consider the naturalization application because the complaint was filed prior to Luna's placement in removal proceedings. Dkt. No. 8.

## II. Applicable Law

### A. Jurisdiction and Dismissal under Rule 12(b)(1)

The threshold question, before considering the substance of any claim, is whether the court possesses jurisdiction over the claim.  This is the case, because federal courts are courts of limited jurisdiction, whose authority exists only within the boundaries established by Congress and the United States Constitution. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999).  A plaintiff bears the burden of proving jurisdiction. Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).

In determining whether jurisdiction exists, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001).  Conclusory allegations or "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Wells v. Ali, 304 Fed. App'x. 292, 293 (5th Cir. 2008) (quoting Fernandez–Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)).

A defendant may file a Rule 12(b)(1) motion to challenge the Court's subject matter jurisdiction to hear a case. Ramming, 281 F.3d at 161. Once a defendant objects to subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction to hear the case. Id. When a defendant files a Rule 12(b)(1) motion, in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) motion before addressing any other attacks on the merits. Ramming, 281 F.3d at 161.

A dismissal for lack of jurisdiction is without prejudice to refiling. Ruiz v. Brennan, 851 F.3d 464, 472 (5th Cir. 2017) (citing Davis v. U.S., 961 F.2d 53, 57 (5th Cir. 1991)).

### B. Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face' and fails to 'raise a right

4

to relief above the speculative level.' " Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512 F.3d 137, 140 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). The Supreme Court has further defined the Twombly standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Unless the Court specifically holds otherwise, dismissal for failing to state a claim upon which relief can be granted is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

### III. Analysis

The sole question before the Court is how Luna's placement in removal proceedings impacts the Court's ability to consider and render relief in this case. After reviewing the relevant caselaw, the Court concludes that it is statutorily barred from granting Luna any relief so long as the removal proceedings are pending against him.

Under 8 U.S.C. § 1421(c), a person who has had their naturalization application denied and has exhausted their administrative remedies "may seek review of such denial before the United States district court for the district in which such person resides." The statute further provides that "[s]uch review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." § 1421(c). Luna has met all of the statutory prerequisites for jurisdiction under this statute: his naturalization application has been denied and he has exhausted all administrative remedies. When the hearing officer denied

Luna's administrative appeal, the letter stated that the decision was a "final administrative denial." Dkt. No. 2-1, pp. 28-29.  This does not, however, end the inquiry.

"The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a).  Thus, when the Court issues relief under § 1421(c), it issues a judgment ordering the Attorney General to naturalize the plaintiff. See Zayed v. U.S., 368 F.3d 902, 906 (6th Cir. 2004) (noting that a Court cannot enter "an order granting the application without reference to the Attorney General").  Thus, "a district court that is exercising its § 1421(c) jurisdiction can review only those decisions that [8 U.S.C. § 1429] permits the Attorney General to make." Id.

The Court notes that the naturalization authority did not always rest solely with the Attorney General.  "Prior to 1990, district courts had exclusive jurisdiction to naturalize aliens." Ogunfuye v. Acosta, 210 F. App'x 364, 366 (5th Cir. 2006).  This authority created "a race between the alien to gain citizenship and the Attorney General to deport him.  If the alien was successful in forcing a final hearing and the granting of his naturalization petition, the deportation proceedings were completely nullified." Shomberg v. U.S., 348 U.S. 540, 544 (1955).  Congress, seeking to prevent a race to the courthouse "between the alien to gain citizenship and the government to deport," eventually prohibited district courts "from naturalizing an alien for whom there was a pending deportation proceeding." Ogunfuye, 210 F. App'x at 366 (5th Cir. 2006).

"In 1990, Congress removed naturalization jurisdiction from the district courts, placing the ability to naturalize aliens exclusively with the Attorney General and with the same limitations" regarding naturalizing applicants who have a pending deportation proceeding. Ogunfuye, 210 F. App'x at 366.

Today, federal law still provides that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding." 8 U.S.C. § 1429.  Thus, when there is a pending removal proceeding, the Attorney General has no "statutory authority to consider [a] naturalization application." Saba-Bakare v. Chertoff, 507 F.3d 337, 340 (5th Cir. 2007).  In other words, this Court cannot order the Attorney General to naturalize a plaintiff when the Attorney General is

statutorily barred from obeying that order. See Klene v. Napolitano, 697 F.3d 666, 668 (7th Cir. 2012) ("If the Attorney General cannot naturalize an alien after removal proceedings have begun, the court cannot direct the Attorney General to naturalize the alien. Judges must not order agencies to ignore constitutionally valid statutes").

Moreover, the Court cannot issue a declaratory judgment that Luna is prima facie eligible for naturalization. "An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors." 8 C.F.R. § 1239.2(f). The Fifth Circuit, however, has made it clear that "only an affirmative communication from the USCIS may establish prima facie eligibility," for which reason courts lack jurisdiction to issue judgments to that effect. Saba-Bakare, 507 F.3d at 341; see also Robertson-Dewar v. Holder, 646 F.3d 226, 231 (5th Cir. 2011) (describing DHS as "the agency with exclusive jurisdiction" to determine prima facie eligibility for naturalization); Ogunfuye v. Holder, 610 F.3d 303, 307 (5th Cir. 2010) ("district courts do not have authority to determine prima facie naturalization eligibility"); Molina-Ramirez v. Holder, 362 F. App'x 387, 390 (5th Cir. 2010) (same).

Thus, while § 1421(c) expressly confers jurisdiction on this Court to consider the naturalization application, § 1429 "limit[s] the scope of the court's review and circumscribe[s] the availability of effective remedies." Zayed, 368 F.3d at 906. In short, the Court cannot fashion a remedy in this case, so long as removal proceedings are pending. Jurisdiction exists, but is "futile" during the pendency of the removal proceedings. Saba-Bakare, 507 F.3d at 340. Rather, Luna must "wait until the termination of the removal proceeding before either a district court or the USCIS entertains a question regarding his naturalization application." Id. If the removal proceedings are terminated in Luna's favor, he would be able to return to this Court to seek review of his naturalization application. If Luna is ordered removed, then any claim to prima facie eligibility for naturalization would be reviewable on an appeal of the removal order to the Fifth Circuit. Id. at 341.

7

There is little question, but that "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." Arizona v. U.S., 567 U.S. 387, 394 (2012). Indeed, Congress has the express constitutional power to "establish a uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. Under our current statutory scheme, Congress has prohibited the Attorney General — and by extension, this Court — from naturalizing persons who have been placed in deportation proceedings. 8 U.S.C. § 1429. The Court must recognize this limitation on its ability to fashion any meaningful relief in this case. That fact dictates the result in this case as it currently stands.

Accordingly, the complaint should be dismissed without prejudice for failure to state a claim upon which relief can be granted. The dismissal should be without prejudice so that Luna may return to this Court after the removal proceedings have concluded.

## IV. Recommendation

It is recommended that the motion to dismiss filed by the Defendants be granted. Dkt. No. 5. It is further recommended that this case be dismissed, without prejudice to refiling, for failure to state a claim upon which relief can be granted.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings

8

on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

      DONE at Brownsville, Texas on January 13, 2020.

                                            _____
                                            Ronald G. Morgan
                                            United States Magistrate Judge